## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**MICHAEL MITCHELL**                                                                 **PETITIONER**
**ADC #167771**

**VS.**                                          **NO. 4:24-cv-00342-KGB-ERE**

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                                          **RESPONDENT**

## RECOMMENDED DISPOSITION

This Recommendation ("RD") has been sent to United States Chief District Judge Kristine G. Baker. You may file written objections to all or part of this RD. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this RD. If you do not object, you risk waiving the right to appeal questions of fact and Chief Judge Baker can adopt this RD without independently reviewing the record.

## I.    Introduction

Pending before the Court is a § 2254 habeas Petition, with supporting brief, filed by Michael Mitchell, an inmate at the Maximum Security Unit of the Arkansas Division of Correction ("ADC"). *Docs. 1, 2.* He attacks three prison disciplinary convictions, alleging they were obtained in violation of his right to procedural due process and that he is "actually innocent" of the underlying rule violations. Because

it plainly appears from the face of the petition that Mr. Mitchell is not entitled to habeas relief, his petition should be summarily dismissed, with prejudice, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

## II.    Background

On April 25, 2023, Mr. Mitchell was charged with three disciplinary violations: (1) failure or refusal to obey verbal and/or written orders by staff; (2) possession of any drug or drug paraphernalia not prescribed by medical staff;  and (3) possession of a cell phone. *Doc. 2 at 20*.

The charging document provides the following information. On April 25, 2023, ADC officers visited Mr. Mitchell's barracks after receiving information that he possessed a cellular device. *Id*. Upon entering, officers observed Mr. Mitchell sitting on a bottom bunk, and when they approached him, he placed something under the bed sheets. *Id*. Mr. Mitchell then rose from the bunk and began to walk away, and officers directed him to stop and submit to hand restraints. *Id*. Initially, Mr. Mitchell refused the officers' instructions, but he eventually complied, after which

---

[1] In conducting the initial review of a habeas petition Rule 4 instructs that if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." As explained in the Advisory Committee's Note to Rule 4, "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer."

officers found a flip phone and a bag under the sheets on the bunk where Mr. Mitchell had been sitting. *Id*. The bag contained a small pieces of paper and a green leafy substance that tested positive for synthetic cannabinoids. *Id*.

On May 1, 2023, following a hearing, a disciplinary panel convicted Mr. Mitchell of each charge, and he received the following sanctions: (1) 60-day loss of commissary and visitation privileges; (2) 365-day loss of phone privileges; (3) 25 days in punitive isolation; (4) a reduction in class;[2] and (5) forfeiture of 911 days of good time. *Id*.

Mr. Mitchell appealed his disciplinary convictions, asserting among other things that: (1) he was not sitting on his assigned bunk when the officers entered the barracks; and (2) the bunk where the flip phone and bag with green leafy contents were uncovered was assigned to another inmate. *Doc. 2 at 33*. Mr. Mitchell exhausted the disciplinary appeal process, which concluded with the Director's June 2, 2023 decision affirming the guilty verdicts. *Id*.

On April 18, 2024, Mr. Mitchell filed the § 2254 petition and supporting brief now before the Court. *Docs. 1, 2*. He asserts that his May 1, 2023 disciplinary

---

[2] Pursuant to Arkansas law, ADC inmates are classified "according to good behavior, good discipline, medical condition, job responsibilities, and involvement in rehabilitative activities." Ark. Code. Ann. § 12-29-202(a)(3). Depending on his or her class status, an inmate may earn up to one day of meritorious good time for every day served as a reduction toward his transfer eligibility date, but inmates reduced to the lowest class or serving time in punitive isolation do not earn meritorious good time.  Ark. Code Ann. § 12-29-202 (b)(1)-(3).

convictions and related punishment violated his right to procedural due process, and he is "actually innocent" of the disciplinary charges. For relief, he asks the Court to reverse and expunge his disciplinary convictions and reinstate his class status and good-time credits. *Id. at 8*.

## III. Discussion

### A. Petitioner's Due Process Claims Are Not Cognizable

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Id*.

The only aspect of Mr. Mitchell's disciplinary punishment that falls within § 2254's subject matter jurisdiction is the loss of good-time credit. Under Eighth Circuit precedent, a due process challenge to the loss of good time, even where a favorable decision would not guarantee a speedier release from custody,[3] may be

---

[3] In *Richmond v. Duke*, 909 F. Supp. 626, 632 (E.D. Ark. 1995), the Honorable G. Thomas Eisele observed that notwithstanding controlling precedent mandating a different answer, "it is far from clear that a challenge to a loss of good-time credits . . . should, in every case . . . , be necessarily viewed as an attack that falls within 2254's requirement that a habeas petitioner be challenging the lawfulness of his continued custody[.]" *Id.* at 630.

pursued through a § 2254 petition for habeas relief. *Blair-Bey v. Nix*, 919 F.2d 1338 (8th Cir. 1990) (holding that a prisoner serving a sentence of life without parole could challenge a loss of good-time credits under § 2254 because his sentence might conceivably be commuted via executive clemency), *cert. denied,* 502 U.S. 899, (1991); *Wilson v. Lockhart*, 949 F.2d 1051, 1051 (8th Cir. 1991) (holding that § 2254 provides the sole federal remedy for ADC inmate challenging his parole eligibility date, even though a favorable decision would not guarantee an earlier release from confinement).

However, Mr. Mitchell lacks a viable habeas claim because his allegations, which are assumed true, fail, even arguably, to establish a violation of federal law. 28 U.S.C. § 2254(a) (providing that a district court can only entertain a habeas petition filed by a person in state custody "on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States.").

Mr. Mitchell claims his rights under the Constitution's Due Process Clause were violated. Due process requirements apply only where a person is "deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Mr. Mitchell's punishment did not involve the loss of life or property;

---

Judge Eisele recognized that an ADC prisoner's good-time credit will advance his parole or transfer-eligibility date, but he will have no right to expect that he will be granted parole and "can be assured of only one thing—that he will be released from the State's custody at the end of the term of years specified by the sentencing court." *Id.* at 630-631.

thus, his only conceivable deprivation is a loss of liberty.  To possess a right to liberty protected by the Due Process Clause, Mr. Mitchell must have "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

The Supreme Court has held that the Due Process Clause itself does not guarantee or create a liberty interest in credit for good behavior while in prison, but a state may create a liberty interest in a "shortened prison sentence through the accumulation of credits for good behavior." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Arkansas's statutory scheme governing meritorious good time eliminates any possibility that Mr. Mitchell has a liberty interest in a shortened sentence through the accumulation of meritorious good time. In *McKinnon v. Norris*, 366 Ark. 404, 408, 231 S.W.3d 725, 729 (2006), a state habeas petitioner claimed that his loss of good time as a disciplinary sanction amounted to the taking of a liberty interest without due process. The Supreme Court of Arkansas disagreed, noting that the governing statute "plainly states that 'meritorious good time will not be applied to reduce the length of a sentence,' [but permits] the application . . . of good time to an inmate's transfer eligibility date." *Id*. at 408, 231 S.W.3d at 729 (*quoting* Ark. Code Ann. § 12-29-201(d)) and citing Ark. Code Ann. § 12–29–201(e)(1)). Multiple federal

courts in this District have likewise concluded that Arkansas law does not create a liberty interest in the retention of meritorious good-time credit.[4]

Even if Mr. Mitchell's lost good-time credits were restored, he would have no legitimate expectation to release on parole. The Supreme Court has never recognized a liberty interest in early release where state law leaves the decision to the discretion of a parole board, which is the case in Arkansas. The Arkansas parole statute provides: "The Post-Prison Transfer Board *may* release on parole any eligible inmate . . . when in the board's opinion there is a reasonable probability that the inmate can be released without detriment to the community or himself or herself and is able and willing to fulfill the obligations of a law-abiding citizen." Ark. Code Ann. § 16-93-701(a)(1) (emphasis added).

The Arkansas Supreme Court "has repeatedly held that there is no liberty interest in parole in Arkansas." *Wood v. Arkansas Parole Board*, 2022 Ark. 30, 5, 39 S.W.3d 340, 344, (2022) (citing *Null v. Ark. Parole Bd.*, 2019 Ark. 50, at 3, 567 S.W.3d 482, 483 (2019)). Likewise, the Eighth Circuit has held that the Arkansas

---

[4] See e.g., *Brown v. Payne*, No. 4:23-cv-00287-BRW-PSH, ECF No. 11, 2023 WL 6626280 (E.D. Ark. October 11, 2023), *report and recommendation adopted by*, No. 4:23-cv-00287-BRW, ECF No. 12, 2023 WL 7159296 (E.D. Ark. Oct. 31, 2023); *Martin v Payne*, No. 4:22-cv-01271-KGB-PSH, ECF No. 44, 2023 WL 10553148 (E.D. Ark. Aug. 4, 2023), *report and recommendation adopted by*, No. 4:22-cv-01271-KGB, ECF No. 65, 2024 WL 1311411 (E.D. Ark., Mar. 27, 2024); *Crockett v. Kelley*, No. 5:18-CV-00210-JM-JTR, ECF No. 16, 2019 WL 1590947 (E.D. Ark. Mar. 14, 2019), *report and recommendation adopted by*, No. 5:18-CV-00210-JM, ECF No. 22, 2019 WL 1590588 (E.D. Ark. Apr. 12, 2019); *Roberts v. Hobbs*, No. 5:14-cv-00044-JHL-BD, ECF Nos. 5, 11, 2014 WL 1345341 (E.D. Ark. April 4, 2014), *certificate of appealability denied*, No. 14-1930 (8th Cir. Aug. 12, 2014).

parole statutes create only a possibility of parole and confer no right to parole giving rise to a liberty interest. *Hamilton v. Brownlee*, 237 Fed. Appx. 114, 115 (8th Cir. 2007) ("Arkansas parole statutes do not create a protectable liberty interest in discretionary parole decisions, and [the plaintiff] had no protectable liberty interest in having defendants follow their hearing policy.").

In sum, Mr. Mitchell has no right to conditional release before the expiration of his state sentence, and neither his loss of good-time credit nor reduction in class infringed a protected liberty interest. Accordingly, his habeas claim based on a violation of due process should be summarily dismissed.

### B.    No Potentially Viable Conditions of Confinement Claims

The Eighth Circuit has held that a *pro se* habeas petitioner raising a "potentially viable" conditions-of-confinement claim should receive an opportunity to pursue that claim if he so chooses. *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014). A viable conditions-of-confinement claim under 42 U.S.C. § 1983 requires allegations not present here: that a person acting under color of state law subjected Mr. Mitchell to a condition of confinement that violated a right secured by the federal Constitution or law.

For reasons already explained, Mr. Mitchell has no liberty interest in the retention of good-time credits or class status. In addition, neither 60 days without commissary and visitation privileges, 365 days without phone privileges, nor 25

days in punitive segregation, without more, constitute deprivations capable of supporting a plausible due process claim. See *Thornsberry v. Barden*, 854 F. App'x 105 (8th Cir. 2021) (holding that time in isolation, loss of privileges, and reclassification were insufficient to state a due process claim); *Smith v. McKinney*, 954 F.3d 1075, 1082 (8th Cir. 2020) (holding that a year in punitive segregation and deprivation commissary, phone, and visitation privileges did not deprive prisoner a liberty interest); *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (holding inmate not deprived of liberty interest during nine months in administrative segregation); *Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (holding that inmates have no liberty interest in maintaining a particular classification level, and thirty days in punitive segregation is not an atypical and significant hardship infringing a liberty interest).

In sum, none of the disciplinary sanctions at issue deprived Mr. Mitchell of a protected liberty interest, and his pleading, if converted to a complaint under 42 U.S.C. § 1983, would be subject to dismissal upon screening. *See* 28 U.S.C. § 1915A (requiring screening and dismissal of any portion of a complaint that is frivolous, malicious, or fails to state a claim on which relief can be granted).

## C.    Mr. Mitchell's Actual Innocence Claim Fails

In addition to the alleged violation of his due process rights, Mr. Mitchell contends that he is "actually innocent" of the disciplinary violations for which he

stands convicted.[5] Mr. Mitchell's actual innocence claims are legally implausible for multiple reasons.

First, the Court's ruling that Mr. Mitchell has no liberty interest arising from any of the punishments imposed upon him as a result of the challenged disciplinary convictions is dispositive of his "actual innocence" claims.

Second, the legal underpinnings for a claim of "actual innocence" are not capable of being engrafted onto a constitutional challenge to a prison disciplinary.[6] While free-standing actual innocence *may* be applicable in the context of a habeas petitioner claiming he is actually innocent of the state court conviction that led to his current incarceration,[7] the doctrine has no applicability to a prison disciplinary conviction. "[A] petitioner does not meet the threshold requirement [for actual

---

[5] For example, Mr. Mitchell alleges that he was charged with disciplinary violations even though the charging officers knew that the bunk where a flip phone and a green leafy substance were recovered was assigned to another inmate, not him. *Doc. 2 at 12-15*. He further alleges that he was not permitted to submit evidence that the bunk in question was not assigned to him. *Id. at 16*.

[6] Factually, even *if* Mr. Mitchell could rely on the actual innocence doctrine to challenge his disciplinary convictions, he fails to satisfy the most fundamental requirement for a petitioner attempting to establish his "actual innocence." The doctrine requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup,* 513 U.S. at 324; *Kidd v. Norman,* 651 F.3d 947, 951–53 (8th Cir. 2011), *cert. denied,* 133 S.Ct. 137 (2012). Mr. Mitchell makes no effort to present any "new evidence."

[7] Even in a habeas action challenging the petitioner's underlying criminal conviction, the law is unresolved as to whether a free-standing actual innocence claim is cognizable  *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th  Cir. 2014) ("The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error." If recognized, such a claim would require "more convincing proof" than gateway actual innocence).

innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (omitting citations). Importantly, Mr. Mitchell does not challenge the state convictions for which he is serving a sentence.

Third, even when a prison disciplinary conviction is subject to constitutional review, it must be upheld if it was supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). This is the only standard that can possibly apply to Mr. Mitchell's allegations that his prison disciplinary convictions lacked due process. Because Mr. Mitchell's disciplinary convictions and related punishment failed to implicate a constitutionally protected liberty interest, he is not entitled to constitutional review. But even if he were, he would not be entitled to relief. When reviewing a prison disciplinary under the "some evidence" standard, a reviewing court is obligated to uphold the findings of an impartial disciplinary hearing officer, even if the only evidence of the alleged disciplinary violation is found in the charging officer's report, which is disputed by the inmate. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). Mr. Mitchell's denial of wrongdoing is not a sufficient basis to set aside the disciplinary convictions under the "some evidence" standard.[8] Nor

---

[8] The evidence supporting Mr. Mitchell's disciplinary convictions included: (1) the charging officer's statement that he observed Mr. Mitchell, sitting on a bunk, place something under the sheets and that an immediate search of that bunk uncovered a green leafy substance and

can it support an "actual innocence" inquiry, even assuming such an inquiry was permitted.

For multiple reasons, Mr. Mitchell's actual innocence claims should be summarily denied.

## IV.   Conclusion

Mr. Mitchell has failed to state a cognizable claim for habeas relief and has no "potentially viable" claims under § 1983.

IT IS THEREFORE RECOMMENDED that the petition for a writ of habeas corpus be DISMISSED, WITH PREJUDICE and the requested relief be DENIED.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED.[9]

Dated 31 July 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

a flip phone; and (2) a confirmation report that the leafy green substance tested positive for synthetic cannabinoids, had been sitting, and watched and a drug test confirmation report. *Doc. 2 at 20, 31-32.* This is more than enough to meet the "some evidence" standard. The hearing evidence also included Mr. Mitchell's statement: "That was not my rack. I was not s[i]tting on the rack. I was going to the bathroom. I told them it was not my rack." *Doc. 2 at 31.*

[9] A Certificate of Appealability should be denied because Mr. Mitchell has not shown that reasonable jurists could debate whether his claims should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. See *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003).